## UNITED STATES v. BOSTON & MONTANA CONSOL. COPPER & SILVER MIN. CO. et al.

(District Court, S. D. New York. June, 1924.)

**Internal revenue ⬳7—Government, suing for tax on increase in value of assets for certain period, was required to prove increase accruing during such period.**

Where actual value of assets of copper mining company was far in excess of book value because of development of property, and the government brought suit for tax on increase under Revenue Act of 1909, for a certain period, the government was required to prove the amount by which the assets increased during such period, there being no presumption that a proportionate part of the profit accrued during such period.

In Equity. Suit by the United States against the Boston & Montana Consolidated Copper & Silver Mining Company and others. Judgment of dismissal.

William Hayward, U. S. Atty., and Thomas J. Crawford, Asst. U. S. Atty., both of New York City (Nelson T. Hartson, Solicitor of Internal Revenue, and Robert A. Littleton, Sp. Atty. Internal Revenue, both of Washington, D. C., of counsel), for the United States.

Shearman & Sterling, of New York City (John A. Garver, of New York City, L. O. Evans, of Butte, Mont., and H. W. Forbes, of New York City, of counsel), for defendant Boston & Montana Consolidated Copper & Silver Mining Co. and others.

DIETRICH, District Judge. Exclusive of questions pertaining to the liability of the individual defendants, which it is not thought necessary to decide, the case is fairly stated in the opening of defendants' printed brief, substantially as follows:

The defendant Boston & Montana Consolidated Copper & Silver Mining Company was organized under the laws of the state of Montana, in July, 1887, with a capital of $3,750,000, consisting of 150,000 shares, of the par value of $25 each. It engaged actively in mining and producing copper and other metals until March 31, 1910, when it sold all its property and assets, subject to its liabilities, to the Anaconda Copper Mining Company for stock of the latter company. On that date the book value of its assets, carried at actual cost, less its liabilities, was $12,030,270.23 (i. e., capital $3,750,000; surplus, $8,280,270.23). The actual value of its net assets was at least $60,000,000, and the value of the stock received for such net assets was at least $60,000,000, the sale thus representing a profit of at least $47,969,729.77 over the cost of the properties.

The Boston & Montana Company had duly filed returns under the Revenue Act of 1909 (36 Stat. 11) for the years 1909 and 1910, duly accounting therein for all earnings from operations during 1909 and 1910, including earnings spent for development work, additions to plant, etc., so that it was not subject to any additional tax under that act because of having realized, through the sale, its earned surplus and its expenditures for development, additions to plant, etc., whether made from earnings or from borrowed money. The profit of $47,969,729.77 represented merely the increase in the value of its properties, not shown on its books, and the suit was brought on the so-called "straight-line" theory that such increase should be treated as having accrued ratably over the period from July, 1887 (when the company was organized), to March 31, 1910 (the date of the sale), on which theory $2,635,699.44 of the profit accrued after December 31, 1908, and was subject to tax at 1 per cent., under the Revenue Act of 1909. The judgment demanded is for the amount of the tax, with penalty and interest at 1 per cent. a month.

It therefore appears that the assets of the Boston & Montana Company increased in value at least $47,969,729.77 between July, 1887, and March 31, 1910, at which time such increased value was realized by a sale. The company is concededly liable for tax on such part of the increase, if any, as in fact accrued during the 15-months peri-

od from January 1, 1909, to March 31, 1910, inclusive. The government had no evidence as to the value of the property on January 1, 1909, and no evidence whatever on that point was presented by it at the trial. The suit was instituted and was tried by the plaintiff upon the theory that, upon the facts stated, the Treasury Department and the courts were bound to presume that a proportionate part of the profit accrued subsequently to January 1, 1909, upon which the defendants were liable for tax, unless they could show affirmatively that the price received did not exceed the fair value of the properties on January 1, 1909 (plus earnings after that date, which had been duly accounted for).

It is to be noted that the suit is not one brought by a taxpayer to recover a tax levied under an application of the "straight-line" rule, and paid under protest. In such case, the taxpayer, being the plaintiff, assumes the burden of showing the exaction unwarranted, and hence of showing that the actual income was less than that assumed by the government. Here the government made no assessment, but comes into court asserting that defendants had a certain income or profit during the period in question, and of necessity it assumed the burden of proving its contention. Can it discharge this burden of judicial proof by invoking an administrative rule of its own creation? Were evidence of actual value wholly impossible, warrant for the application of the rule might be found in necessity. So, too, it might be that from slight or remote evidence, such as that during a period of years there was a gradual and apparently uniform development of surrounding conditions bearing upon the value of specific property, which physically remained unchanged, the difference between the selling price at the end of the period and the cost at the beginning could reasonably be distributed over the entire period, without specific evidence of value in any given year. But such apportionment would rest upon a fair inference of fact, while the rule here put forth by the government is of universal application, without any proofs whatsoever, or any justification in necessity, and rests upon a pure presumption. I am inclined to think the case is not appropriate for the recognition of such a presumption.

For present purposes, however, let us accept the theory upon which the government has proceeded. Admittedly the presumption is rebuttable, and makes only a prima facie case, the ultimate strength of which depends upon the nature of the property and attendant conditions. To find for it any basis of reason at all we must assume that in common experience the rise and fall in value of property is generally gradual and approximately uniform, and is graphically represented by a straight line, and that fluctuations, represented by a curved or broken line, are exceptional. We are to bear in mind, too, that the ultimate inquiry here is, not the average increase in value per year during the period from 1887 to 1910, but the actual increase from January 1, 1909, to April 1, 1910, and that this actual increase is the only legitimate basis upon which the tax can be assessed. Doyle v. Mitchell Bros., 247 U. S. 179, 38 Sup. Ct. 467, 62 L. Ed. 1054; U. S. v. Cleveland, etc., 247 U. S. 195, 38 Sup. Ct. 472, 62 L. Ed. 1064. Hence, if we accept the straight-line method, it must be regarded as the means, of reaching, not a general average for the entire period, but the actual increase during the period in question.

By their proofs the defendants have quite conclusively shown that in 1901 the property in question was of a value approximating the price for which it was sold on March 31, 1910. If, then, the value of property presumptively moves from one known point to another, in a straight line, in computing the value as of January 1, 1909, should we not draw a straight line from 1901, instead of from 1887, to March 31, 1910? The actual value in 1901 being shown, only by abandonment of all semblance of reason or necessity can it be assumed that before 1909 the value got back to the straight line drawn from 1887 to 1910.

But, if we put aside this consideration, I am constrained to the view that, by their other affirmative proofs and the inferences fairly to be drawn therefrom, defendants have shown that there was no substantial augmentation in value during the taxable period from January 1, 1909, to March 31, 1910. True, the properties were under process of development during this period, and the development work may be deemed to have added to the value an amount equal to the cost thereof; but this was not an increment to old, but a fresh contribution of new, capital, and in so far as such new capital had its source in income it had already borne its just burden. The property was being operated and developed in a normal way, in the course of which known ore was being taken out and new ore was being uncovered. The considerations which would influence or affect sale value remained sub-

stantially the same. The unexpected was not happening, and the disclosures gave confirmation, not to mere hope or speculation, but to existing dependable belief, predicated upon known facts; there were no new "discoveries." In short, by development there was simply added the substantial equivalent of values which in operation were being taken out.

It is therefore concluded that the plaintiff has no cause of action, and its complaint will be dismissed.